**ORIGINAL** 

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. LA 01-42911-SB |
| **Artimm, S.r.l.** | Section 304 |
| Debtor. | **AMENDED OPINION ON PROCEDURAL ISSUES** |
| | Date: March 13, 2002<br>Time: 11:00 a.m.<br>Ctrm: 1575 |

## I. Introduction

The duly appointed trustee of Artimm, S.r.l., an Italian corporation[1] that is a debtor in a bankruptcy case in Rome, brings this § 304[2] case to forestall a default judgment in a state court action in Los Angeles and to administer its United States affairs in connection with its ongoing Italian bankruptcy case. The court finds that the Italian trustee qualifies to bring this § 304 case and that the Italian automatic stay applies to all creditors in the United States. Alternatively, the court issues a stay of all debt enforcement actions in the United States against the debtor. At the same time, the court adopts procedures pursuant to which United States creditors may file claims in this § 304 case (as well as in Rome).

## II. Relevant Facts

Dr. Sergio Lo Prato filed this ancillary bankruptcy case[3] under § 304 on November 1, 2001.[4] Dr. Lo Prato is the bankruptcy trustee for Artimm, S.r.l., an Italian corporation that is the subject of a bankruptcy case filed in Rome on May 15, 2001. Because of its pending bankruptcy, Artimm has not defended a case brought by Anna Dunn in Los Angeles County Superior Court, and Ms. Dunn contends that she is entitled to a default judgment against Artimm in that case.

In addition to the Dunn litigation, Artimm has other business in this judicial district. It has claims exceeding $100,000 against Tristar Pictures, Inc. ("Tristar"), which is located in this district, and with which Artimm has been in negotiation for more than a year. Artimm apparently also has other assets in this district, including claims for royalty payments and other entitlements pursuant to various motion picture production agreements.

Tristar has filed a response to the petition, in which it admits that it owes royalties to Artimm under a 1992 distribution agreement. Tristar contends that the amount owing is unliquidated because it has deductions, offsets, defenses, recoupments and counterclaims against Artimm.

Artimm is also a partner in D&A, a partnership organized under the laws of the Netherlands Antilles, which has its headquarters in Curaçao in the Carribean.

Artimm has brought a motion for the imposition of a stay under § 304(b). In particular, it wants to stay the Dunn action in order to prevent the entry of a default judgment against it in Superior Court. Tristar does not object to the § 304 case going forward, or to the imposition of a stay under § 304(b)[5] with the same substance as an automatic stay under § 362. Curiously, Artimm has also filed a document which purports to withdraw the request for relief under § 304, including the imposition of a stay thereunder.

Ms. Dunn contends that there is no evidence before the court that Dr. Lo Prato is the authorized representative of the Italian estate, and that there is no evidence to support any relief under § 304 at this time.

## III. Analysis

---

[1] S.r.l. is the acronym for "societá di responsibilitá limitata," which translated literally from Italian means "company with limited liability." An S.r.l. is typically a privately-held company and is a procedurally less stringent form of company than an Italian stock corporation, or Società per Accione (S.p.A.). An S.r.l. is somewhat analogous to an American limited liability company, and is similar to a French société de responsibilité limitée (S.R.L.) and a German gesellschaft mit Beschrankter Haftung (GmBH).

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (West 1999) and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

[3] This is not Artimm's first visit to this court. It filed a chapter 11 case in 1995 in this district, which was dismissed on the consent of the debtor a few weeks after filing.

[4] The petition is not clear as to which provisions of the Bankruptcy Code it wants to invoke. In addition to relief under § 304, it also seeks relief as an involuntary petition under § 303(b). If relief is granted under the latter section, the petitioner wants to proceed under chapter 7. For the present, the court treats this as a petition under § 304.

[5] Tristar and the trustee have stipulated on the record that their ongoing negotiations are not impeded by the stay issued by this court.

2

Three issues require resolution at this preliminary stage of the case. The first issue is the impact of the attempted withdrawal of the § 304 petition. The second issue is whether this case qualifies to proceed under § 304. The third issue is whether the Italian automatic stay applies in the United States, and thus to Artimm's United States creditors.

### A. Withdrawal of § 304 Petition

The impact, if any, of the attempted withdrawal of the § 304 petition turns on the nature of a § 304 case.

#### 1. Nature of a § 304 Case

A foreign representative[6] may commence a limited United States bankruptcy case under § 304 that is ancillary to a foreign proceeding[7]. The purpose of a § 304 case is to assist a foreign court in its administration of a foreign proceeding of liquidation or reorganization.[8]

---

[6] Section 101(24) provides that a "foreign representative" means a "duly selected trustee, administrator, or other representative of an estate in a foreign proceeding."

[7] Section 101(23) provides:

> "foreign proceeding" means proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization . . . .

[8] See, e.g., Armco Inc. v. North Atlantic Ins. Co. (In re Bird), 229 B.R. 90, 94 (Bankr. S.D.N.Y. 1999); Universal Cas. & Sur. Co. v. Gee (In re Gee), 53 B.R. 891, 896 (Bankr. S.D.N.Y. 1985); see also SAMUEL L. BUFFORD ET AL., INTERNATIONAL INSOLVENCY 25-52 (FJC 2001); S.A.

Congress enacted § 304 to permit a foreign representative to file a case "to administer assets located in this country, to prevent dismemberment by local creditors of assets located here, or for other appropriate relief." H.R. REP. NO. 95-595, at 324 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6287; S. REP. NO. 95-989, at 35 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5821. The purpose of such a case is to provide a more efficient and less costly alternative to a plenary case that would duplicate the foreign insolvency case. See Cunard S.S. Co. v. Salen Reefer Servs. AB, 773 F.2d 452, 456 (2d Cir. 1985); In re Axona Int'l Credit & Commerce Ltd., 88 B.R. 597, 607 (Bankr. S.D.N.Y. 1988).

One of the principal functions of the domestic court in a § 304 case is to assist in the efficient administration of the foreign proceeding by preventing domestic creditors from pursuing or executing on assets in the United States. See, e.g., Bird, 229 B.R. at 96. Thus it is entirely appropriate for Dr. Lo Prato to bring this case to forestall Ms. Dunn's state court litigation.

There are several important differences between a traditional bankruptcy case under the Bankruptcy Code and a case under § 304. A case under § 304 is not a full-scale bankruptcy case. See In re Culmer, 25 B.R. 621, 633 (Bankr. S.D.N.Y. 1982). It does not confer on the foreign representative the full panoply of powers and rights that are available to a trustee in a traditional bankruptcy case under United States law. See, e.g., Vesta Fire Ins. Corp. v. New Cap Reinsurance Corp., 244 B.R. 209, 213 (S.D.N.Y. 2000). However, the court has the power to apply virtually any (or all) of the Bankruptcy Code provisions in a particular § 304 case. See In re Rubin, 160 B.R. 269, 274 n.3 (Bankr. S.D.N.Y. 1993); BUFFORD, supra, at 27.

Section 304 gives the bankruptcy court significant discretion. See, e.g., Vesta, 244 B.R. at

---

Morales & B.A. Deutsch, Bankruptcy Code Section 304 and U.S. Recognition of Foreign Bankruptcies: The Tyranny of Comity, 39 BUS. LAW. 1573 (1984); B.J. Gallagher & J. Hartje, The Effectiveness of § 304 In Achieving Efficient and Economic Equity in Transactional Insolvency, 1983 ANN. SURV. BANKR. L. 1; Anne Norby Nielsen, Note, Section 304 of the Bankruptcy Code: Has it Fostered the Development of an "International Bankruptcy System?" 22 COLUM. J. OF TRANSNAT'L L. 541 (1984).

213. However, that discretion typically points in favor of granting relief to § 304 petitioners. *Id.* Section 304 gives a court wide latitude to mold appropriate relief so that a foreign insolvency can proceed in a rational fashion with due regard for all of the varied and competing interests at issue. *Id.*

A § 304 case does not call for the bankruptcy court to make a determination of the foreign debtor's property interests, the timing of liquidation, or the manner in which the validity of creditors' claims is to be determined. *See, e.g., id.* at 221. The Italian court is in the best position to make these decisions in this case for the purpose of conserving estate resources and to maximizing the assets available for distribution. *See, e.g., Bird,* 229 B.R. at 96.

Section 304 is not intended to be the exclusive remedy available to a foreign representative. A foreign representative may also bring a traditional case under chapter 7 or chapter 11 in the United States. *See Cunard S.S. Co. v. Salen Reefer Servs. AB,* 773 F.2d 452, 455-56 (2d Cir. 1985); *Axona,* 88 B.R. at 607; *see also In re Florida Peach Corp.,* 63 B.R. 833, 839-40 (Bankr. M.D. Fla. 1986) (holding that the power of a Panamanian corporation, in liquidation in Panama, to file a chapter 11 case in the United States turns on United States law (pursuant to Panamanian choice of law rules), where the corporation has a commercial domicile in United States).

A chapter 7 or chapter 11 case is a better choice than a § 304 case if the business of the debtor in the United States is sufficiently complicated or substantial to require the full panoply of bankruptcy powers and rights for the proper administration of United States debts and assets. *See Brierley,* 145 B.R. 151, 167. Such a chapter 7 or chapter 11 case creates a bankruptcy estate in the United States. *See In re Axona Int'l Credit & Commerce Ltd.,* 88 B.R. 597, 606 (Bankr. S.D.N.Y. 1988). Furthermore, the automatic stay takes effect immediately upon the filing of the bankruptcy petition under chapter 7 or 11, even where it is related to a foreign case. *See* § 362(a).

**2. Attempt to Withdraw Petition**

To determine whether a petition under § 304 can be withdrawn, we begin with the language of the statute. Section 304(a) states:

> A case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative.

Section 304 designates such a filing as "a case." This term has important consequences under the Bankruptcy Code.

The language of § 304(a) is strikingly parallel to language used repeatedly in §§ 301, 302 and 303. Section 301(a) states in relevant part: "A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition . . . ." Similarly, § 302(a) provides in relevant part, "A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition . . . ." Similarly yet again, § 303(b) provides in relevant part, "An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition . . . ."

Thus every petition under the Bankruptcy Code commences a bankruptcy "case." Such a case provides a vehicle for all other matters relating to that bankruptcy debtor to take place. The term "proceeding," in contrast, refers to a particular action raised or commenced within a case, including motions and adversary proceedings. *See generally* 2 COLLIER ON BANKRUPTCY ¶ 301.03 (Lawrence P. King, ed., 15th ed. 2002) (citing former Bankruptcy Rule 101). A proceeding in a bankruptcy case is the functional equivalent of a case in a non-bankruptcy court.

The designation of the fundamental bankruptcy unit as a "case" was a major change in terminology from the prior law, the Bankruptcy Act of 1898 ("the Act"), 11 U.S.C. §§ 1-703 (1898, as amended from time to time) (repealed 1978, effective September 30, 1979). Under the Act, the fundamental bankruptcy unit was a "proceeding." *See, e.g., id.* § 1(24) ("'Petition' shall mean a document filed in a court of bankruptcy . . . initiating a proceeding under this Act"); § 2(a) ("The courts . . . of bankruptcy . . . are hereby invested with . . . jurisdiction . . . to exercise original jurisdiction in proceedings under this Act . . .")

There is no procedure to terminate a case under the Bankruptcy Code by "withdrawing" the petition that commenced the case. A case that is not completed can only be terminated by dismissal. *See* §§ 305, 707, 930, 1112, 1208 and 1307.

Because a petition filed under § 304 commences a case, it likewise can only be terminated by dismissal. A party commences the procedure for dismissal by filing a motion or

4

request with the court. There is no such procedure as a "withdrawal" of a petition. Artimm may not bring this case to an end in this fashion. Thus the purported withdrawal of the petition is ineffective.

### B. Qualifications for Relief

To qualify for relief under § 304, a petitioner must show that a foreign proceeding, as defined in § 101(23), is pending and that the party filing the petition qualifies as a "foreign representative" under § 101(24). *See* § 304(a); *see generally* SAMUEL L. BUFFORD ET AL., INTERNATIONAL INSOLVENCY 44-45 (FJC 2001).

In this case there is no doubt that there is a foreign insolvency proceeding pending in Rome. Dr. Lo Prato has submitted a duly certified order issued by the bankruptcy section of the Rome Civil Court, dated July 26, 2001 in the case of Artimm S.r.l., case no. 62975, which shows that Artimm has a bankruptcy case pending in that court.

The qualifications of a foreign representative are construed broadly under § 304. *See In re Kingscroft Ins. Co.*, 138 B.R. 121, 124 (Bankr. S.D. Fla. 1992) (finding that board of directors qualified as a foreign representative, even though liquidators for the corporation had been appointed in winding-up proceedings in England and Bermuda).

In this case Dr. Lo Prato has shown that he qualifies to bring a § 304 case here. The order issued by the Italian court explicitly authorizes him to file a § 304 case in Los Angeles ancillary to the Italian bankruptcy case and to take all necessary actions in this court.[9] It further authorizes Dr. Lo Prato to engage his attorneys herein, Paul Beck and Albert S. Golbert, to represent him in this § 304 case. Ms. Dunn offers no evidence in opposition to this evidence. The court finds that this authorization is sufficient to show that Dr. Lo Prato is a qualified foreign representative under § 101(24).

Ms. Dunn also contends that the petitioner must show that the debtor has assets within this district. There is *dictum* in *Koreag* to support this point. *See In re Koreag, Controle et Revision S.A.,* 130 B.R. 705, 711 & n.3 (Bankr. S.D.N.Y. 1991) (noting that there is a disagreement as to this requirement), *vacated and remanded on other grounds,* 961 F.2d 341 (2d Cir. 1992). However, there is no mention of such a requirement in § 304.

The court finds that § 304 imposes no requirement that the debtor have assets in the jurisdiction where the § 304 case is filed, or anywhere in the United States.[10] *See Vesta,* 244 B.R. at 214; *Metzeler v. Bouchard Transp. Co. (In re Metzeler),* 78 B.R. 674, 678-80 (Bankr. S.D.N.Y. 1987); BUFFORD, *supra,* at 28. As the legislative reports indicate, the seeking of "other appropriate relief" is sufficient to support a § 304 case.[11] *See* H.R. REP. NO. 95-595, at 324; S. REP. NO. 95-989, at 35.

### C. Automatic Stay

### 1. Automatic Stay Under United States Law

One of the distinctive features of a § 304 case is that filing such a case does not invoke an automatic stay under § 362(a). *See, e.g., Goerg v. Parungao (In re Goerg),* 844 F.2d 1562, 1568 (11th Cir. 1988); *In re Koreag, Controle et Revision,*130 B.R. 705, 709-10 (Bankr. S.D.N.Y. 1991), *vacated and remanded on other grounds,* 961 F.2d 341 (2d Cir. 1992); *In re Axona Int'l Credit & Commerce Ltd.,* 88 B.R. 597, 607 (Bankr. S.D.N.Y 1988); BUFFORD at 31.

---

[9]The order explicitly states that the court's authorization to Dr. Lo Prato to proceed in bankruptcy court in Los Angeles is granted because of the default judgment sought by Anna Dunn in the United States.

[10]Nonetheless, it is undisputed that Tristar, which is located in this district, owes a substantial, though undetermined, sum to the debtor.

[11]For example, a foreign administrator may file a § 304 case to obtain a stay of litigation in the United States and require the plaintiff to file its claim in the foreign bankruptcy case. *See Haarhuis v. Kunnan Enterprise,* 177 F.3d 1007 (D.C. Cir. 1999); *In re Kingscroft Insurance Co.,* 138 B.R. 121, 125-26 (Bankr. S.D. Fla. 1992); *In re Gercke,* 122 B.R. 621, 625-26 (Bankr. D.D.C. 1991) (staying action, except to require debtor to produce documents ordered in state court litigation before § 304 case was filed). Such a procedure may be important to protect the foreign bankruptcy estate from a United States judgment that could be given recognition in the foreign proceeding. *See, e.g., In re Culmer,* 25 B.R. 621, 633 (Bankr. S.D.N.Y. 1982).

5

The filing of any other kind of bankruptcy case in the United States creates an estate that includes all property of the debtor, wherever in the world the property is located. See, e.g., In re Lykes Bros. S.S. Co., 191 B.R. 935, 936 (Bankr. M.D. Fla. 1995). At the moment of the filing, this property becomes property *in custodia legis* of the bankruptcy court. Id.

The automatic stay under United States bankruptcy law applies to all estate property wherever it is located.[12] See, e.g., Lykes Bros. S.S. Co. v. Hanseatic Marine Serv. (In re Lykes Bros. S.S. Co.), 207 B.R. 282, 287 (Bankr. M.D. Fla. 1997); Nakash v. Zur (In re Nakash), 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996). Thus the automatic stay under United States law, applicable in a bankruptcy case filed in the United States (except for a case under § 304), would apply to an Italian creditor who otherwise could file an action in Italy against the United States debtor.

### 2. Automatic Stay Under Italian Law

Like the United States bankruptcy law, Italian bankruptcy law provides for an automatic stay of creditor collection activities upon the filing of a bankruptcy case. Article 51 of the Italian law states: "from the date of the declaration of bankruptcy no individual lawsuit can be initiated or continued against assets included in the bankruptcy." See Disciplina del fallimento, del concordato preventivo, dell'amministrazione controllata e della liquidazione coatta amministratriva, March 16, 1942, no. 267, art. 51, Gazz. Uff. April 6, 1942, n.81 (as amended). The property of the bankruptcy estate,[13] under the Italian law, includes all of a debtor's property on the date of the declaration of bankruptcy.[14] See id. Art. 42.

The scope of the Italian bankruptcy estate and the automatic stay under Italian law are substantially similar to those under United States law. As under United States law, property of the estate under Italian bankruptcy law includes all such property located within or outside of Italy. Like the automatic stay under United States bankruptcy law, the Italian automatic stay applies to all property of the estate, whether in Italy or abroad. See BUFFORD, supra, at 80 n.498; Eberhard Schollmeyer, The New European Convention on International Insolvency, 13 BANKR. DEV. J. 421, 426 n.25 (1997) (stating that every EU country claims worldwide effect for its automatic stay and the application of its law to all estate property, wherever in the world such property may be located).

This interpretation is supported by the enactment in 1995 of the Law on the Reform of Private International Law. See C.c., Legge 31 maggio 1995, n. 218, Riforma del sistema italiano di Diritto internazionale privato; Francesco Salerno, Legge di Reforma del Diritto Internazionale Privato e Giurisdizione Fallimenatare, 1998 RIV. DIR. INTER. PRIV. PROC. 5. Although by its terms this law did not directly address bankruptcy, in substance the law made a fundamental change in Italy's approach to international insolvencies from a "territorial" approach to a "universal" approach.[15] See id. at 20. This result derives from the provisions for the recognition of foreign judgments and for staying domestic proceedings pending the outcome of related foreign proceedings. See Law 218/1995, Arts. 7 and 64; see also Salerno, supra, at 20-21.

The court's conclusion as to the effect of the Italian automatic stay is also supported by the European Union Regulation on Insolvency

---

[12]The bankruptcy laws of most countries provide for a similar stay or moratorium against creditor collection activities outside of the insolvency proceeding. See, e.g., Lindner Fund, Inc. v. Polly Peck Int'l PLC, 143 B.R. 807, 809 (Bankr. S.D.N.Y. 1992) (describing automatic stay under English reorganization law).

[13]Technically speaking, the Italian law does not use a concept exactly like the concept of "estate" under United States law. The Italian law provides that the order of bankruptcy deprives the owner of the right to administer or dispose of all non-exempt assets as of that date, see id. Art. 42, and requires the bankruptcy judge to take over control of the assets, see id. Art. 84.

[14]For individuals, the Italian law provides for certain exempt property. See id. Arts. 46 and 47.

[15]Under the "universal" view courts in all countries should cooperate to promote the treatment of an insolvency case, insofar as possible, as a single case. See BUFFORD, supra, at 3. Assets and creditors, under this view, should be treated equally wherever they may be located. See id.

Proceedings, Council regulation 1346/2000, on insolvency proceedings, 2000 O.J. (L160) 1-18 ("the EU Regulation"). The EU Regulation applies to all insolvency cases filed in the European Union beginning today (May 31, 2002) (except with respect to Denmark, which for historical reasons is not subject to this EU Regulation).[16] The EU Regulation provides that, upon the opening of a bankruptcy case in any EU country, the domestic automatic stay in the forum country applies in all other EU countries. Under this regulation, the issuance of a declaration of bankruptcy in an Italian bankruptcy case imposes the Italian automatic stay throughout the European Union. This regulation supports the court's determination that the Italian automatic stay applies extraterritorially, including in the United States.

It is particularly appropriate that a United States bankruptcy court recognize the extraterritorial reach of the Italian automatic stay in this case. The United States cannot expect that foreign courts will recognize the extraterritorial reach of its own automatic stay under § 362 if its courts do not equally recognize the impact in the United States of a foreign automatic stay.

The court finds that the Italian automatic stay prohibits Ms. Dunn from proceeding in Los Angeles County Superior Court against Artimm. Accordingly, Ms. Dunn's action in that court, and all proceedings therein, are void from the date of the declaration of bankruptcy in Artimm's bankruptcy case in Rome. *See, e.g., Schwartz v. United States (In re Schwartz)*, 954 F.3d 569, 571 (9th Cir. 1992) (holding that any action in violation of the automatic stay is void).

**2. Stay under § 304**

In the event that the law of the country where the foreign proceeding is pending does not provide a sufficient stay of proceedings in the United States, § 304 provides a separate grant of power to a United States court to issue a stay as to

---

[16]The treaties of accession pursuant to which Great Britain, Ireland and Denmark became members of the European Union made a regulation such as the one here at issue inapplicable in those countries unless they specifically choose to be subject thereto. While Great Britain and Ireland have decided to become subject to this regulation, Denmark has not as of now made this decision.

proceedings in the United States that may jeopardize the orderly reorganization or liquidation of the foreign estate.

**a. Powers of the Court**

The powers of the court in a case under § 304 are specified in § 304(b), which provides:

> Subject to the provisions of subsection (c) of this section, if a party in interest does not timely controvert the petition, or after trial, the court may--
> (1) enjoin the commencement or continuation of--
>     (A) any action against--
>         (i) a debtor with respect to property involved in such foreign proceeding; or
>         (ii) such property; or
>     (B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate;
> (2) order turnover of the property of such estate, or the proceeds of such property, to such foreign representative; or
> (3) order other appropriate relief.

This provision gives the court the power to issue an injunction that has the same effect as an automatic stay (except that it is not automatic: it goes into effect when it is issued by the court). *See, e.g., In re Schimmelpenninck*, 183 F.3d 347, 361-62 (5th Cir. 1999); *see also In re Singer*, 205 B.R. 355, 357 (Bankr. S.D.N.Y. 1997) (reversing the bankruptcy court's denial of such an injunction against unknown creditors).

United States law provides generally that the filing of a bankruptcy case (apart from a case under § 304) imposes an automatic stay on

7

virtually all creditor collection activities.[17] See § 362. While such a stay is not automatic in a § 304 case, this provision contemplates that the court will promptly address the issue of a stay if the § 304 petition is not timely controverted. In this case, no opposition to the petition has been timely filed.

**b. Exercise of § 304 Powers**

The exercise of the powers in § 304(b) is constrained by § 304(c), which provides:

> In determining whether to grant relief under subsection (b) of this section, the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with--
> (1) just treatment of all holders of claims against or interests in such estate;
> (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
> (3) prevention of preferential or fraudulent dispositions of property of such estate;
> (4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;
> (5) comity; and
> (6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

The court finds that these requirements are satisfied with respect to granting a stay in this case.

By far the most important factor in § 304(c) is comity. However, comity is not at issue in this case. Comity comes into play only when there is a true conflict between United States law and that of a foreign jurisdiction, and an accommodation between the laws is required. See, e.g., In re Xacur, 216 B.R. 187, 195-96 (Bankr. S.D. Tex. 1997) (finding no conflict between requirements of laws of United States and Mexico in that case); see also Underwood v. Hilliard (In re Rimsat Ltd.), 98 F.3d 956, 963 (7th Cir. 1996); Gitlin v. Société Générale (In re Maxwell Communication Corp.), 93 F.3d 1036 1049-50 (2d Cir. 1996) (finding that a transaction would be an avoidable preference under United States law but not under English law, which was applicable to the case).

While there is a conflict between the requirements of Italian bankruptcy law, especially the automatic stay thereunder, and the California state court procedures under which Ms. Dunn is proceeding, the court finds that there is no true conflict on this point between the requirements of United States law and those of Italian law in this case. The filing of a domestic bankruptcy case would impose an automatic stay on any proceeding by Ms. Dunn in state court. There is no conflict in finding that Italian law imposes a similar stay. Thus comity is not at issue.

Ms. Dunn raises one issue with respect to § 304(c): she is concerned that she would have few if any rights in the Italian bankruptcy case, and that her rights there would not equal her rights in a bankruptcy case in the United States. While she offers no evidence to support her concern,[18] the court finds that procedures should be crafted in this § 304 case for her protection, and for the orderly administration of her claim. Accordingly, the court authorizes Ms. Dunn and any other United States creditor to file a claim in this case under the same procedure as if this were a domestic chapter 7 case.[19] As provided under

---

[17] Furthermore, before the stay became automatic under United States law in 1973, it was customary to grant such stays ex parte immediately upon the commencement of a case. See 1A COLLIER ON BANKRUPTCY ¶ 11.08[2] (14th ed. 1978).

[18] The court does not perceive that the Italian law provides any foundation for Ms. Dunn's concerns. That law provides for the filing of a claim by a creditor. See Art. 93. It also provides for the payment of creditors pro rata after the payment of administrative expenses and priority creditors. See Art. 111.

[19] The court assumes that Ms. Dunn and any other United States creditors will file their claims in the Artimm bankruptcy case in Rome to protect their interests there.

8

United States bankruptcy law, such a claim will be presumed allowed until an objection is filed. *See* § 502(a). If an objection is brought, the court will decide the objection as a contested matter in due course. Alternatively, any party may remove to this court the case pending in state court, at which time the court would consider it a claim subject to the same procedures set forth herein. The court finds that this procedure provides such protection as Ms. Dunn may properly claim against prejudice and inconvenience in the processing of her claim in the Italian bankruptcy case.

The court finds that the remaining factors in § 304(c) are satisfied in this case. The court finds that the issuance of a stay in this court is appropriate to promote the just treatment of all holders of claims against or interests in the bankruptcy estate in the case in Rome, and especially the just treatment of the claimants who have filed their claims in that court. The court further finds that the distribution of assets under Italian law is substantially in accordance with the order prescribed under United States law. *See* Italian law Art. 111. No issue of preferential or fraudulent dispositions of property of the estate has been brought to the court's attention in this case. Finally, a fresh start is not at issue, because this case involves a corporation rather than an individual. Thus all of the requirements of § 304(c) are met.

In consequence, the court issues a stay against all creditors that enjoins :

(1) the commencement or continuation of any action or judicial proceeding in the United States against Artimm or its trustee or to create or enforce a lien against property in the United States that is subject to the Italian bankruptcy case, or against such property; and

(2) the enforcement of any judgment against Artimm or its trustee with respect to such property.

### IV. Conclusion

The court concludes that Dr. Sergio Lo Prato has shown that, as the bankruptcy trustee for Artimm, he is the duly authorized foreign representative for the foreign proceeding for Artimm which is pending in Rome, Italy. Accordingly, he has properly filed a § 304 case in this court as a case ancillary to the case in Rome, which may not be dismissed without an appropriate motion to the court.

The court further finds that the automatic stay in the Italian case applies to creditors in the United States. In particular, the court finds that the case filed by Ms. Dunn in Los Angeles County Superior Court violates that stay. In consequence, the proceedings in Superior Court after Artimm's bankruptcy filing on May 15, 2001 are void. Alternatively, the court issues a stay order in this § 304 case that stays all creditors, including Ms. Dunn, from proceeding in a United States court against Artimm or its trustee.

At the same time, the court adopts a procedure for Ms. Dunn and any other United States creditor to file a claim in this court, as they would be permitted to do if this were a domestic chapter 7 case. Any such claim will be processed in the same fashion as if this were a chapter 7 case.

Dated: May 31, 2002

Samuel L. Bufford
United States Bankruptcy Judge

9

## CERTIFICATE OF MAILING

I certify that a true copy of this **AMENDED OPINION ON PROCEDURAL ISSUES** was mailed on **MAY 3 1 2002** to the parties listed below:

U.S. Trustee's Office
221 No. Figueroa St., Suite 800
Los Angeles, CA 90012

Artimm S.R.L.
C/o Dott. Sergio Lo Prato
Studio Dott. Sergio Lo Prato
Viale delle Milizie, 34
00192 Roma, Italy

Dott. Szergio Lo Prato
Studio Dott. Sergio Lo Prato
Viale delle Milizie, 34
00192 Roma, Italy

Bernardino Apicella
Studio Legale
Massardi E. Maniezzo
Piazza Margana, 29
00186 Roma, Italy

Albert S. Golbert, Esq.
Law Offices of Albert S. Golbert and Associates
601 West 5th Street, Eighth Floor
Los Angeles, CA 90071-2094

Paul A. Beck, Esq.
Ben-Ziv & Beck, LLP
601 West 5th Street, Suite 800
Los Angeles, CA 90071-2094

Directors Guild of America, Inc.
7920 Sunset Blvd.
Los Angeles, CA 90046
Attn: Beverly Ware
      Linda Liu

Directors Guild of America-Producer
Pension Health Plans
8436 West Third Street, Suite 900
P. O. Box 48127
Los Angeles, CA 90048-4189

Robert A. Bush, Esq.
Peter S. Dickinson, Esq.
Geffner & Bush
3500 West Olive Ave., Suite 1100
Burbank, CA 91505

Victor Drai
2765 Woodstock Road
Los Angeles, CA 90045

David R. Weinstein, Esq.
Shelly Rothschild, Esq.
Weinstein, Eisen, Weiss & Rothschild LLP
1925 Century Park East, Suite 1150
Los Angeles, CA 90067-2712

Samuel Perlmutter, Esq.
Kelly L. Aden, Esq.
Law Offices of Sam Perlmutter
5757 Wilshire Blvd., Suite 636
Los Angeles, CA 90036-3686

DATED: **MAY 3 1 2002**

_____
Deputy Clerk