ORIGINAL

FILED
DEC - 1 2005
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY              Deputy Clerk

ENTERED
DEC - 6 2005
CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY              Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re

Artimm, S.r.l.,

      Debtor.

Case No. LA 01-42911-SB

Section 304

**OPINION ON PROPOSED SETTLEMENT**

Date: June 21, 2005
Time: 10:00 a.m.
Ctrm: 1575

# I. Introduction

This is a quintessential Hollywood[1] bankruptcy case. Before the court is a $533,114 settlement of a controversy ("the funds") between Artimm, S.r.l. ("Artimm"), an Italian corporation, and TriStar Pictures, Inc. ("Tristar") over distribution proceeds of the motion picture *Weekend at Bernie's II* ("the film"). The producer Victor Drai ("Drai") opposes the transfer of the funds to Artimm's Italian trustee (appointed by the bankruptcy section of the Tribunale Civile in Rome, where Artimm's main bankruptcy case is pending), on the grounds that the film belongs to a Netherlands Antilles partnership, of which he is a half owner (along with Artimm), and that he may be entitled to a portion of the funds. Anna Dunn ("Dunn"), a former Artimm executive who handled its interests in the United States, opposes the transfer of the funds on the grounds that it will be harder for her to collect her unpaid salary of $263,333.33 in Rome than in this court. Both agree that Artimm should accept the money from TriStar. They disagree on sending the money to the Italian trustee in Rome, even though the settlement agreement requires this transfer.

The court finds that the funds belong entirely to Artimm, and Drai has no claim to any portion thereof. The court also finds that Dunn should prosecute her claim in the main proceeding in Rome and seek payment there. In consequence, the court orders the transfer of the funds to the Italian trustee in Rome for administration and distribution through the main bankruptcy case pending there.

# II. Relevant Facts

The main bankruptcy case of debtor Artimm, S.r.l. ("Artimm") is pending in Rome, Italy, which is the location of its domicile and principal place of business. In 2001, the Italian trustee Dr. Sergio Lo Prato ("Lo Prato") filed this ancillary proceeding under bankruptcy code[2] § 304[3] to avert a default judgment against Artimm in a case brought by Dunn in Los Angeles County Superior Court.

At the time of filing, TriStar owed Artimm an unsettled amount for TriStar's distribution of the film. After the commencement of the § 304 case, the Trustee brought an adversary proceeding against TrisStar to collect this receivable.

In due course this controversy was settled. The proposed settlement agreement ("the agreement"), which is currently before this court for approval, would result in a recovery of $553,114 for the benefit of the Artimm estate. The agreement stipulates that the settlement proceeds be transferred to Artimm's trust account in Italy for distribution pursuant to order of the Tribunale in Rome.[4] Both Artimm and TriStar, as well as the court in Rome, have approved the agreement.

Only two U.S. creditors, Drai and Dunn, have appeared to oppose the agreement. They both agree that the settlement should be approved, except insofar as it provides for the transmittal of the funds to the Artimm bankruptcy trustee in Rome.

It is common ground that the film belongs to D&A Partnership ("D&A"), a Netherlands Antilles partnership formed in 1992 to produce and distribute the film. Drai and Artimm each hold a 50% interest in D&A. Under the partnership agreement, Artimm advanced €11,841,001.17 ($13,961,724.47 at the market rate of €1 =

---

[1] Hollywood is a Los Angeles neighborhood nestled into a hillside within view of the Los Angeles federal courthouse (and visible from my chambers window).

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (West 2005) and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

[3] Section 304 was repealed by Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 802(d)(3) (2005), effective (with minor exceptions) for cases filed on or after October 17, 2005. The new law replaced § 304 with chapter 15, a whole new chapter based on the Model Law on Cross-Border Insolvency promulgated by the United Nations Commission on International Trade Law.

[4] The settlement provides for a $22,500 carve-out to be held by local Artimm counsel to satisfy a lien on the film proceeds for the benefit of certain union pension plans.

2

$1.1791)[5] for the production of the film. In exchange for this investment, the partnership agreement provides for Artimm to recoup its investment from film revenues before the division of revenues between the partners begins. After Artimm recoups its initial investment, the agreement provides for an equal sharing of the distribution proceeds between Drai and Artimm.[6] In addition, the partnership agreement provides for Artimm to act as managing partner and to provide Drai with regular accountings of worldwide revenues.

Artimm acknowledges having received €9,832,527.63 ($11,593,533.32 at the same market rate) in proceeds from the film. Thus, Artimm's unpaid advances total an additional $2,368,191.15. The proposed settlement of $533,114 would leave $1,835,077.15 in unreimbursed expenses owing to Artimm before Drai is entitled to share equally in subsequent revenues. While Drai voices doubts about the accuracy of the proceeds report, and suspects that Artimm has received additional revenues from the film, he provides no evidence of any further proceeds, or that the accounting presented is incorrect.[7]

---

[5] The court has used the conversion rate on November 30, 2005, as shown in The Wall Street Journal in place of that used by Artimm in calculating the conversion amounts. SEE WALL ST. J., Dec. 1, at B9.

[6] The partnership agreement in fact contains a somewhat more complex formula for calculating the expenses to be reimbursed. The court assumes without deciding that the further complexities are not relevant to the calculation of the shares of Artimm and Drai.

[7] Drai also complains that Artimm has failed to report to him on the status of receivables from the film or the status of the partnership's capital accounts. The court finds that neither of these issues is relevant. It is the TriStar receivable that is being paid, and those proceeds are before this court. There is nothing pending in this court as to other receivables, and they presumptively are the concern of the estate and the parties in interest in Rome. The capital accounts are insignificant: the partnership agreement provides for only a $100 contribution by each partner to a capital account.

The D&A partnership agreement contains two other provisions that bear on the propriety of this court's approval of the settlement agreement. First, the partnership agreement provides that "the Netherlands Antilles shall have sole and absolute jurisdiction over any disputes between the Partners relating to this Agreement and the sole location for venue shall be Curaçao, Netherlands Antilles." Second, according to the partnership agreement, "the Partners hereby consent also to an arbitration in the event of any dispute arising hereunder . . . ."

The Producers Pension Plan and the Producers Health Plan of the Directors Guild of America ("the plans") jointly have a judgment lien against the funds, and have filed a proof of claim in the amount of $33,527.74. The settlement proposes to set aside a sum to pay this claim.

### III. Analysis

This case was filed under § 304, which provided the statutory framework for cases filed in the United States that are ancillary to insolvency cases filed in foreign countries. While this case was pending, Congress repealed § 304 and replaced it with chapter 15, an entirely new statutory scheme based on the Model Law on Cross-Border Insolvency promulgated by the United Nations Commission on International Trade Law in 1997. While § 304 is the applicable law for this case, the court's decision is informed also by the provisions of chapter 15.

#### A. Applicable Law

We first analyze the applicable statutory provisions and case law governing the motion before the court. We then examine the objections before the court in light of this legal background.

#### 1. Section 304

The philosophy of former § 304 is deference to the country where the main insolvency case is located and flexible cooperation in administration of assets. *See Hong Kong and Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991, 998 (9th Cir. 1998). Section 304 was designed to operate in aid of a main case abroad. *See Interpool, Ltd. v. Certain Freights of the M/VS Venture Star*, 878 F.2d 111, 112 (3d Cir. 1989).

Former § 304(b)(2) authorizes this court to order the turnover of property of a foreign

bankruptcy estate, or the proceeds of such property, to a foreign representative. In determining whether to grant such relief, § 304(c) instructs:

> the court shall be guided by what will best assure an economical and expeditious administration of such estate, consistent with—
> (1) just treatment of all holders of claims against or interests in such estate;
> (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
> (3) prevention of preferential or fraudulent dispositions of property of such estate;
> (4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;
> (5) comity; and
> (6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.[8]

This section articulates congressional policy to recognize the primary interests of a foreign proceeding to administer property involved in that proceeding, wherever it may be located. *See A.P. Esteve Sales, Inc. v. Manning (In re Manning)*, 236 B.R. 14, 20 (9th Cir. BAP 1999).

A bankruptcy court is given broad discretion in fashioning an appropriate remedy in a § 304 case. *See, e.g., Bank of New York v. Treco (In re Treco)*, 240 F.3d 148, 154-55 (2d Cir. 2001); *Koreag, Controle et Revision S.A. v. Refco F/X Associates (In re Koreag, Controle et Revision S.A.)*, 961 F.2d 341, 348 (2d Cir. 1992); *In re Axona Int'l Credit & Commerce Ltd.*, 88 B.R. 597, 606 (Bankr. S.D.N.Y.1988), *aff'd*, 115 B.R. 442 (S.D.N.Y.1990), *appeal dismissed*, 924 F.2d 31 (2d Cir.1991); *In re Culmer*, 25 B.R. 621, 624

---

[8]While Artimm's case in Rome started out in reorganization, it has been converted to a liquidation case. In consequence, this last factor is not applicable in this case.

(S.D.N.Y. 1982); *see also* S. Rep. No. 95-989, at 35 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5821 (§ 304(c) guidelines are designed to give the court the maximum flexibility in handling ancillary cases). The court must exercise this discretion in light of all of the circumstances of each individual case. *See Treco*, 240 F.3d at 156.

One of the purposes of a § 304 case is to prevent the piecemeal distribution of assets in the United States by means of legal proceedings initiated in domestic courts by local creditors. *See id.* at 156; *Koreag*, 961 F.2d at 348; *Victrix S.S. Co. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987); *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 454-55 (2d Cir.1985).

The filing of a case under § 304 does not create a bankruptcy estate under U.S. law. *See, e.g., In re Schimmelpenninck*, 183 F.3d 347, 351 (5th Cir. 1999); *Vesta Fire Ins. Corp. v. New Cap Reinsurance Corp.*, 244 B.R. 209, 213 (S.D.N.Y. 2000). *See generally* SAMUEL L. BUFFORD ET AL., INTERNATIONAL INSOLVENCY 29-31 (2001). The estate of a foreign debtor, for the purposes of § 304, is created and defined by the law of the jurisdiction in which the foreign case is pending. *See, e.g., Koreag*, 961 F.2d at 348; *Aranha v. Eagle Fund, Ltd. (In re Thornhill Global Deposit Fund, Inc.)*, 245 B.R. 1, 10 (Bankr. D. Mass. 2000).

### 2. Chapter 15

After the filing of this § 304 case, Congress repealed § 304 and replaced it with chapter 15. While chapter 15 is only applicable to cases filed on or after October 17, 2005, and not to this case, an examination of its relevant provisions is helpful in guiding this court in its application of § 304.

### a. Chapter 15 Procedure

The proper procedure under chapter 15 would be for a foreign representative to make an application for the recognition of the case in Rome as the main proceeding for Artimm. *See* § 1515(a).

The foreign representative would be required to prove his or her credentials as a qualified foreign representative by presenting: (a) a certified copy of the decision commencing the insolvency case in Rome and appointing the representative; (b) a certificate from the tribunale in Rome affirming the existence of the insolvency case there and his appointment as a

4

representative of that estate; or (c) some other evidence acceptable to the court of the existence of the foreign proceeding and of the appointment of the foreign representative. See § 1515(b). In this case, the Artimm representative brought a certificate from the tribunale in Rome complying with alternative (b).[9]

Chapter 15 requires a U.S. bankruptcy court to issue an order recognizing a foreign proceeding as a foreign main proceeding if it is pending in the country where the center of the debtor's main interests is located. See § 1517(b)(2). A foreign main proceeding is defined in § 1502(4) as, "a foreign proceeding pending in the country where the debtor has the center of its main interests . . . ." The debtor's center of main interests is presumed to be where its registered office is located. See § 1516(c). This issue has not been contested in this case. The court assumes that, under chapter 15, it would find that Artimm's center of main interests is located in Rome.

The consequences of an order recognizing a foreign main proceeding are substantial. Most dramatically, the U.S. automatic stay, in all its details, applies immediately with respect to the debtor and property of the debtor that is located within the territorial jurisdiction of the United States. See § 1520(a)(1). This is a major change from the law under § 304, which required a court order for the imposition of a stay on domestic creditor collection action. See § 304(b)(1); In re Artimm, 278 B.R. 832, 839-44 (Bankr. C.D. Cal. 2002) (issuing stay against all creditor collection activity in the United States against Artimm or its trustee, and the enforcement of any judgment against Artimm or its trustee with respect to property in the United States). It is noteworthy that an automatic stay arising under domestic law in the country where the main proceeding is filed may also apply in the United States. See id. at 840-41.

Furthermore, under chapter 15, § 363 (governing sale, use or lease of property of the estate), § 549 (regulating postpetition transactions) and § 552 (determining the effect of postpetition security interests) apply to any transfer of an interest of the debtor in property within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of a domestic bankruptcy estate. See § 1520(a)(2). In addition, § 552 applies to property of the debtor within the territorial jurisdiction of the United States. Finally, unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by § 363 and § 552. See § 1520(a)(3). In addition to the automatic effects of the recognition of a foreign main proceeding provided by § 1520, § 1521 authorizes a number of other modes of relief that the court may grant upon the request of the foreign representative.

One of the most important changes introduced by chapter 15 is a mandate that the court cooperate "to the maximum extent possible" with a foreign court or representative, either directly or through any domestic trustee. See § 1525(a). The court is authorized to communicate directly with, or to request information or assistance directly from, a foreign court or a foreign representative, subject to the rights of a party in interest to notice and participation. See § 1525(b). Equally, chapter 15 imposes on a domestic trustee the same obligations of communication and cooperation. See § 1526.[10]

The only difference that § 1515 would have imposed in this case is its requirement that the certificate be translated into English. See § 1515(d). In this case, Artimm filed a copy of the certificate in its original Italian language, without a translation.

### b. Entrustment of Assets to Foreign Representative

As described up to this point, the chapter 15 regime looks somewhat different from that applicable to this case under § 304. However, there is one provision that is strikingly similar. As under § 304, § 1521(b) authorizes the court, upon the request of the foreign representative, to entrust the distribution of all or part of the debtor's U.S. assets to the foreign representative.

Unlike § 304, § 1521(b) imposes a condition on the turnover of U.S. assets to the foreign representative: the turnover is authorized,

---

[9]Section 1516(b) provides: "the court is entitled to presume that the documents presented in support of the petition for recognition are authentic, whether or not they have been legalized."

[10]See also § 1527, describing various appropriate forms of cooperation between courts.

5

"provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." *Id.* The "provided that" language in § 1521(b) seems to make the protection of the interests of creditors in the United States a mandatory condition on the turnover of U.S. assets to a foreign representative.

The language of § 304(c) is less demanding. This section, which governs this case, requires that the court be "guided by what will best assure an economical and expeditious administration of [the] estate," consistent with the six factors articulated in § 304(c).[11] The court must analyze the objections to the proposed turnover settlement under these § 304(c) factors.

### 3. Application of § 304(c)

Section 304(c) contains two general instructions. First, it instructs that, in deciding whether to turnover property foreign bankruptcy estate to that estate's representative, the court shall be guided by what will best assure an economical and expeditious administration of the foreign bankruptcy estate. In this court's view, the approval of the settlement agreement, including the transmittal of the funds to the administrator in Rome, will best assure an economical and expeditious administration of the Artimm bankruptcy estate administered in the court in Rome. That court, and not this court, can assure that all creditors of the same class are treated equally. That court, and not this court, can assure that Dunn's claim is treated equally with the claims of other creditors of the same priority as her claim.

Second, § 304(c) instructs that the court's decision on the efficient and expeditious administration of the foreign bankruptcy estate be guided by the six factors enumerated therein. In this case, these factors divide into two parts: the sufficient protection of United States creditors, and international comity.

#### a. Sufficient Protection of U.S. Creditors

The sufficient protection of U.S. creditors, required by § 1521(b) for cases filed after it became effective, covers essentially the same ground, in the context of this case, as three of the factors in § 304(c): the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the Italian proceeding, and the distribution of proceeds of the Italian estate substantially in accordance with the order prescribed by U.S. law. If the court is satisfied that the interests of creditors in the United States are sufficiently protected, each of these three factors will be satisfied.

Two of the factors play no role in this case. No issue has been raised with respect to the prevention of preferential or fraudulent dispositions of property of the estate either in the United States or in Italy. In addition, the opportunity for a fresh start is inapplicable, because the Artimm estate is in liquidation. The only factor that remains for examination, in consequence, is comity.

#### b. International Comity

Comity is by far the most important factor in § 304. *See, e.g., Maxwell Communication Corp. v. Société Générale (In re Maxwell Communication Corp.)*, 93 F.3d 1036, 1048 (2d Cir. 1996). Comity is "the recognition which one national allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895). The comity analysis must consider the international system as a whole, in addition to the interests of individual states, because the effective functioning of the system is advantageous to all the affected jurisdictions. *See Maxwell*, 93 F.3d at 1048. Comity takes into account the interests of the United States, the interests of the foreign state or states involved, and the mutual interests of the family of nations in just and efficiently functioning rules of international law. *See id.* The U.S. Supreme Court has said: "We cannot have trade and commerce in world markets and international

---

[11]The six factors listed in § 304(c) appear only in § 1507 of chapter 15, which authorizes a court, after issuing a recognition order, to provide assistance to a foreign representative beyond that authorized in the Bankruptcy Code or other United States law. In determining whether to provide such additional assistance, § 1507(b) directs the court to consider whether such additional assistance, consistent with the principles of comity, will reasonably assure the realization of the other five factors previously specified in § 304(c).

6

waters exclusively on our terms, governed by our laws, and resolved in our courts." *The M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972). Deference to foreign insolvency proceedings will often facilitate the distribution of the debtor's assets in an equitable, orderly, efficient, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion. *See Maxwell*, 93 F.3d at 1048; *Cunard*, 773 F.2d 452, 458.

The guidelines of § 304(c) should be applied with flexibility by the courts. *See Axona*, 88 B.R. at 598. The legislative history of § 304 states:

> These guidelines are designed to give the court the maximum flexibility in handling ancillary cases. Principles of international comity and respect for the judgments and laws of other nations suggest that the court be permitted to make the appropriate orders under all of the circumstances of each case, rather than being provided with inflexible rules.

H.R. Rep. No. 95-595, at 324-25 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6280-81; S. Rep. No. 95-989, at 35 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5821.

In general, comity should be accorded to foreign proceedings if they do not violate the laws or public policy of the United States, and if the foreign court abides by fundamental standards of procedural fairness. *See, e.g., Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999); *Cunard*, 773 F.2d at 457. In the insolvency context, U.S. courts should require only that the foreign forum have subject-matter jurisdiction, recognize fundamental creditor protections, and provide fair treatment to all claim holders. *See, e.g., In re Schimmelpenninck*, 183 F.3d 347, 352, 365 (5th Cir. 1999).

Comity should be withheld only when its acceptance would be contrary or prejudicial to the laws, the public policies or the rights of the citizens of the United States. *See, e.g., Treco*, 240 F.3d at 157. *Treco* is the most important United States case denying the turnover of property to a foreign administrator. In that case the Second Circuit found that Bank of New York, a secured creditor holding $600,000 as security for a much larger debt owing to it, was not required to turnover the funds to a Bahamas bankruptcy trusee, in large part because it had appeared that the $600,000 would be consumed in administrative expenses. *See id.* at 159-61. The Second Circuit denied turnover of the funds on the grounds of a substantial difference between the priority rules for the security held by a secured creditor under United States law and the applicable priority rules Bahamian bankruptcy law. *See id.* at 158-61. *See also Interpool, Ltd. v. Certain Freights*, 102 B.R. 373, 377-79 (D. N.J. 1988) (refusing to open a § 304 case ancillary to an Australian bankruptcy case, and entering an order for relief in an involuntary chapter 7 case on the grounds that Australian bankruptcy law fails to provide a court-supervised liquidation procedure, notice to creditors of major agreements between the liquidator and insiders, or equitable subordination for insider misconduct); *In re Papeleras Reunidas, S.A.*, 92 B.R. 584, 592-94 (Bankr. E.D.N.Y. 1988) (refusing to recognize Suspension of Payments proceeding in Spain, in part because of failure to notify U.S. creditors of proceeding and unexplained disappearance of assets that should have been distributed to creditors).

### B. Objections

With the foregoing principles in mind, we turn now to the Drai and Dunn objections to the approval of the compromise before the court.

#### 1. Drai Objection

A party in interest may properly appear before the court in any proceeding that may affect that party's interest in a case, whether directly or indirectly. Thus, Drai may properly appear before this court to claim that property which is subject to this court's jurisdiction is not property of the Italian estate for Artimm, and thus should not be transferred to Rome for administration in its main case.

Drai contends that he is entitled to a portion of the settlement proceeds, or at least that this decision should be made in a different forum.

Drai does not invoke any of the considerations under § 304(c) in his objection to the turnover of the settlement funds to Lo Prato. Instead, he raises two strictly legal arguments. First, he argues that the funds belong to D&A, and that he is entitled to a portion thereof as one of the D&A partners. Second, he argues that this issue must be decided under the law of the Netherlands

7

Antilles rather than United States (or Italian) law.

### a. Property of the estate

Under § 304(b)(2), the power of the court to turnover assets extends only to property of the estate. The nature of the determination that must be made with respect to proper ownership of the assets requires that it be done prior to turning over the assets to the foreign court. *Koreag*, 961 F.2d at 349. A determination that the funds are not property of the estate does not improperly affect other creditors of the estate, because they have valid claims only against the estate's bona fide assets. *Id.*

This interpretation of § 304(b)(2) is supported by the language of the statute. Section 304(b)(2) authorizes turnover only of "property of such estate, or the proceeds of such property." Thus, the terms "property of such estate" and "proceeds of such property" presuppose an antecedent determination of property interests as a condition to the turnover of property to a foreign representative. *See Koreag*, 961 F.2d at 348.

Property interests have an independent legal source, antecedent to the distributive rules of bankruptcy administration, that determines, in the first instance, the interests of claimant parties in particular property. *Id.* at 349; *see, e.g., Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000); *United States v. Butner*, 440 U.S. 48, 55 (1979). Property interests are generally determined by the local law where the property is located, not by the law of the forum where the insolvency case is filed. *See, e.g., In re Lines*, 81 B.R. 267, 271 (Bankr. S.D.N.Y. 1988).[12]

Drai correctly points out that partnership property is not property of the estate of a partner unless the partner is entitled to a distribution of the property. *See In re Weiss*, 111 F.3d 1159, 1167 (4th Cir. 1997). However, he agrees that Artimm is entitled to a distribution of the entire proceeds of the film until it is repaid its production and distribution expenses of $14.5 million. Thus, the issue of whether the settlement funds here at issue are property of the Artimm estate is directly before the court.

### b. Preliminary Determination

If there is a bona fide dispute as to the debtor's interest in property, the bankruptcy court must make a preliminary determination as to the debtor's property interest prior to authorizing turnover to a foreign administrator. *See Koreag*, 961 F.2d at 349 (requiring a court to make a threshold determination whether disputed funds in a bank account were property of the bankruptcy estate before the funds could be sent to Switzerland for administration in the debtor's main case pending there). If ownership is disputed, the parties must be given an opportunity to be heard on that issue before assets are turned over to a foreign representative. *See, e.g., J.P. Morgan Chase Bank v. Altos Hornos De Mexico, S.A. de C.V.*, 412 F.3d 418 (2d Cir. 2005); *Manning*, 236 B.R. at 21 (dictum).[13]

Artimm's other creditors are not prejudiced by such a threshold determination as to property ownership. Drai is not merely asserting rights as an ordinary creditor or claimant in a bankruptcy proceeding. His position is that Artimm does not own the funds here at issue. A determination that the funds are not property of the estate, therefore, does not improperly affect other creditors of the estate, because they have valid claims only against the estate's bona fide assets.

### c. Choice of Law

---

[12]*In re Lines* does not support Artimm's position. That case involved an injunction under § 304(b)(1), utilizing the broader "involved in" standard of that provision. *See* 81 B.R. at 272. Nevertheless, the court *did* engage in a threshold determination of local law, holding that the particular property at issue, an insurance fund, was sufficiently connected to the debtor under New York law to be "involved in" the foreign insolvency proceeding. *See id.* at 271. This court similarly concludes that particular property must be determined to be "of [the] estate" before it may be turned over pursuant to § 304(b)(2).

[13]There is dictum in *Manning* that the court may enjoin the commencement or continuation of an action against a debtor under § 304(b)(1) without making a determination of the debtor's interest in property. *See Manning*, 236 B.R. at 21. In fact, this court made such a determination previously in this case. *See In re Artimm*, 278 B.R. 832 (Bankr. C.D. Cal. 2002). The dictum in *Manning* is not relevant to the issue before this court, which arises under § 304(b)(2).

8

When determining whether to turnover property to a foreign representative under § 304(b)(2), the bankruptcy court must apply local law to determine whether the debtor has a valid ownership interest in that property when the issue is properly posed by an adverse claimant. *Koreag*, 961 F.2d at 349.

This raises the question of what local law will supply the applicable substantive rule. *Koreag*, 961 F.2d at 350. Drai argues that the dispute under the partnership agreement cannot be resolved under California law, or even U.S. law.

In order to determine the applicable substantive law, we must first decide what choice of law rule to apply. The Ninth Circuit directs us to apply federal choice of law rules, not those of the forum state, in federal question cases with exclusive jurisdiction in the federal courts (like bankruptcy). See *Lindsay Enterprises, Inc. v. Beneficial Reinsurance Co. (In re Lindsay)*, 59 F.3d 942, 948 (9th Cir. 1995); *accord Vanston Bondholders Protective Committee v. Greene*, 329 U.S. 156, 161-62 (1946) (dictum); *Koreag*, 961 F.2d at 350. Thus, in this case the court must apply federal choice of law rules.

Under federal choice of laws rules, the applicable substantive law is that of the jurisdiction having the greatest interest in the litigation. *Koreag*, 961 F.2d at 350. None of the parties has addressed the issue of which jurisdiction has the greatest interest in the dispute before this court.

Furthermore, in the international insolvency context, comity under § 304(c) may take priority over a forum selection clause in a contract. See, e.g., *Treco*, 240 F.3d at 162-63 (affirming district court's refusal to apply forum selection clause in pledge agreement).

Fortunately, in this case it is not necessary to determine the applicable substantive law, or to resolve any conflict between it and the application of comity. The parties have agreed that the only issue for determining Drai's interest, if any, in the settlement proceeds is whether Artimm's advance has been repaid in full. This is an issue of fact, on which Drai loses. He has failed to provide any evidence to rebut Artimm's evidence that a substantial portion of the advance that it made for the production of the film remains to be repaid, and that the settlement funds will only repay part of the remaining balance. Thus, the settlement funds belong to Artimm's estate.

**2. Dunn Objection**

Dunn makes two objections to the turnover of assets to the Italian trustee. First, she argues that this court has already ordered, on May 31, 2002, that it will administer Dunn's and all other United States creditors' claims as if this were a chapter 7 case. Moreover, she argues that this court has stated that procedures should be crafted in this § 304 case for Dunn's protection, and for the orderly administration of her claim. Second, Dunn claims that she will suffer prejudice and inconvenience if her claim is not fully administered by this court, based on (a) statements made to her by the Italian trustee; (b) the fact that no creditors have received payment from the Italian court, notwithstanding "Artimm's substantial assets"; and (c) her dire financial situation, prohibiting her from bringing a claim in Italy.

Section 304 was designed to ensure the centralization of claims administration in the foreign forum, which is essential to the successful resolution of the foreign insolvency case. See *Vitrix S.S. Co. v. Salen Dry Cargo, A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987); *Manning*, 236 B.R. at 23. If this court permits Dunn to proceed against the funds in this court, she may be able to improve her position in relation to other Artimm creditors, and thereby disrupt the orderly reconciliation of claims and the fair distribution of assets in the Italian insolvency case. See *Manning*, 236 B.R. at 24. This is not appropriate.

Furthermore, U.S. bankruptcy courts have not hesitated to require foreign creditors to file their claims and to litigate in our courts if they wish a distribution from a U.S. debtor's estate. It is equally appropriate to expect U.S. creditors to file and litigate their claims in a foreign main bankruptcy case. See, e.g., *International Transactions, Ltd v. Embotelladora Agras Regiomontana, SA de CV*, 347 F.3d 589, 594 (5th Cir. 2003); *In re Brierly*, 145 B.R. 151, 163 (Bankr. S.D.N.Y. 1992).

This court is not persuaded that Dunn would be substantially prejudiced by requiring her to prosecute her claim in the bankruptcy court in Rome, where she has also filed her claim. Counsel for the trustee advise the court that her claim is pending there without objection, and that distributions on it and other claims principally await the arrival of the funds subject to the settlement proposal before this court. Thus, the court finds that Dunn's financial situation does not prevent her from asserting her claim effectively in the court in Rome.

The lack of distribution to creditors in the case pending in Rome, according to the evidence

presented to this court, is a direct consequence of the delay in transmitting the funds here at issue to the court there for distribution. Lo Prato informs the court that the Tribunale in Rome will be ready to make a distribution to creditors promptly after it receives these funds.

Furthermore, Lo Prato, acting through his counsel appearing in this court, expressly represents that Dunn's claim is pending in Rome without objection, and that she can expect to receive her pro rata share of the distribution in consequence of her claim there. The court finds this sufficient to give little weight to anything that Lo Prato may have said to Dunn several years ago when the case there was commencing.

Dunn is not a local U.S. creditor who should be given special protection by this court. Her relationship with Artimm began in Italy, where she was a consultant or employee of the firm. She moved to the United States to continue her relationship with Artimm, and continued to do business with Artimm after moving here. Most of this work was done after she knew of Artimm's bankruptcy filing in Rome. Her relationship to the debtor has Italian origins and strong Italian ties. She is not a "local" creditor for whom the court should have solicitude, even if this were proper. The U.S. Supreme Court stated more than one hundred years ago:

> [E]very person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government . . . as the known and established policy of that government authorizes. . . . He is conclusively presumed to have contracted with a view to such laws of that government, because the corporation must of necessity be controlled by them .
>
> . . .

*Canada Southern Ry. v. Gebhard*, 109 U.S. 527, 537 (1883).

The court finds that Dunn's claim can be processed in the proceeding in Rome as expeditiously as in Los Angeles, and that such a resolution will promote the economical and expeditious administration of the Artimm bankruptcy estate in the Tribunale in Rome. This resolution of Dunn's claim before this court supersedes this court's prior dicta on the processing of her claim. In consequence, the court overrules Dunn's objections to approval of the settlement in full.

### IV. Conclusion

The court concludes that Drai has failed to provide sufficient evidence to support his contention that he is entitled to any of the settlement funds. The court further finds that the best assurance of an economical and expeditious administration of the bankruptcy estate in Rome, of which the settlement funds are a part, is best promoted by turning these funds over to the Italian trustee for administration in Rome, and the administration of Dunn's claim in that forum.

In consequence, the court approves the settlement agreement, and directs that the settlement funds be transmitted to the Tribunale Civile in Rome for administration and distribution in the Artimm main case pending there.

DATED: December 1, 2005

Samuel L. Bufford
United States Bankruptcy Judge

10

## CERTIFICATE OF MAILING

I certify that a true copy of this OPINION ON PROPOSED SETTLEMENT was mailed on _____ to the parties listed below:

U.S. Trustee's Office
725 So. Figueroa St., Suite 2600
Los Angeles, CA 90017

Charles M. Coate
Costa, Abrams & Coate, LLP
1221 Second St., Third Floor
Santa Monica, CA 90401

Albert S. Golbert
Albert S. Golbert & Associates
601 West Fifth St., Eighth Floor
Los Angeles, CA 90071-9036

Peter S. Dickinson
Geffner & Bush
3500 West Olive Ave., Suite 1100
Burbank, CA 91505

Victor Drai
2765 Woodstock Rd.
Los Angeles, CA

Michael M. Plotkin
Law Offices of Michael M. Plotkin
1801 Avenue of the Stars, Suite 801
Los Angeles, CA 90067-5890

Paul A. Beck
Ben-Zvi & Beck, LLP
13701 Riverside Drive, Suite 701
Sherman Oaks, CA 91423

Directors Guild of America, Inc.
7920 Sunset Blvd.
Los Angeles, CA 90046
Attn: Elliott Williams

Ivan L. Kallick
Ileana M. Hernandez
Manatt Phelps & Phillips, LLP
11355 West Olympic Blvd.
Los Angeles, CA 90064

DATED: DEC - 6 2006

_____
Deputy Clerk

21